1   Ned N. Isokawa (State Bar No. 66287)
    John P. Phillips (State Bar No. 154412)
2   Richard E. Elder (State Bar No. 205389)
    PAUL, HASTINGS, JANOFSKY & WALKER LLP
3   55 Second Street, 24th Floor
    San Francisco, CA  94105-3441
4   Telephone:    (415) 856-7000
    Facsimile:    (415) 856-7100
5   nedisokawa@paulhastings.com
    johnphillips@paulhastings.com
6   richardelder@paulhastings.com

7   Attorneys for Petitioners
    DELL INC., DELL CATALOG SALES, L.P.,
8   and DELL PRODUCTS, L.P.

9                     UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12  DELL INC., a corporation; DELL            CASE NO. C 06-5928 JSW
    CATALOG SALES, L.P., an entity; DELL
13  PRODUCTS, L.P., an entity,
                                              **PETITIONERS' REPLY MEMORANDUM
14                Petitioners,                IN SUPPORT OF MOTION TO COMPEL
                                              ARBITRATION**
15        vs.

16  PAMELA F. ALVAREZ,                        Date:        February 23, 2007
                                              Time:        9:00 a.m.
17                Respondent.                 Courtroom:   2, 17th Floor

18                                            The Honorable Jeffrey S. White

19

20

21

22

23

24

25

26

27

28

CASE NO. C-06-5928 JSW                                    DELL'S REPLY ISO MOTION
                                                          TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

I.  SUMMARY OF ARGUMENT ................................................................. v

II. ARGUMENT .......................................................................................... 1

    A.  Respondent and Dell Entered Into a Binding Arbitration Agreement .......... 1

    B.  The Court Must Enforce the Parties' Agreement and Compel Arbitration ...................................................................................... 2

    C.  Texas Law Applies to Respondent's Agreement and Supports Arbitration ...................................................................................... 2

        1.  Texas Law Does Not Conflict With California Policy Because California Does Not Have an Overriding Prohibition Against Class Action Waivers ................................................................ 2

        2.  California Does Not Have a "Materially Greater Interest" Than Texas in Resolving This Dispute ................................................. 4

    D.  Dell's Arbitration Agreement is Fair and Enforceable – It is Not Unconscionable ................................................................................ 7

        1.  Dell's Arbitration Agreement is Not Exculpatory ......................... 7

        2.  Respondent's Case Law and Additional Arguments Do Not Support a Finding of Unconscionability ........................................ 8

    E.  The Arbitration Agreement is Also Enforceable Under California Law and *Discover Bank* ................................................................. 9

        1.  *Discover Bank* and *Klussman* Do Not Announce a Blanket Rule Against Class Action Waivers.  They Require a Case-by-Case Analysis .......................................................................... 9

        2.  Dell's Position Does Not Conflict With *Discover Bank* Because the Factual Setting Is Different .................................... 10

        3.  *Klussman* Does Not Apply Because it Involved a "Bill Stuffer" and a "Hidden Waiver" ................................................ 11

        4.  *Klussman* is Inconsistent With *Discover Bank* ......................... 12

    F.  Respondent's Remaining Argument Does Not Support Her Requested Relief – the "Warranty Carve-out" Does Not Apply ................................. 12

        1.  Respondent's Claims Are Not Based on the Applicable Written Warranty. ............................................................... 13

        2.  Even if Some Ambiguity Exists, the Claims Still Must Be Arbitrated ................................................................................ 13

        3.  A Single Sentence From Dell's Brief in *Heichmann* Does Not Change the Result ............................................................... 14

III. CONCLUSION .................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Adams v. Dell Computer Corp.,*
   2006 WL 2670969 (S.D. Tex. Sept. 18, 2006) .............................................................. 6

*In re American Homestar of Lancaster, Inc.,*
   50 S.W.3d 480 (Tex. 2001) ....................................................................................... 15

*AT&T Techs., Inc. v. Communications Workers of America,*
   475 U.S. 643 (1986) ............................................................................................. 2, 14

*Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.,*
   94 S.W.3d 163 (Tex. App. 2002) ................................................................................ 5

*City of Galveston v. Galveston Mun. Police Ass'n.,*
   57 S.W.3d 532 (Tex. App. 2001) ............................................................................. 14

*Cohen v. DirecTV,*
   142 Cal. App. 4th 1442 (2006) ................................................................................ 11

*Dell, Inc. v. Muniz,*
   163 S.W.3d 177 (Tex. App. 2005) .......................................................................... v, 6

*Discover Bank. v. Sup. Ct.,*
   134 Cal. App. 4th 886 (2005) ............................................................................... 3, 10

*Discover Bank. v. Sup. Ct.,*
   36 Cal. 4th 148 (2005) ..................................................................................... passim

*Doctor's Assocs., Inc. v. Casarotto,*
   517 U.S. 681 (1996) ............................................................................................ v, 15

*Falbe v. Dell Inc.,*
   2004 WL 1588243 (N.D. Ill. July 14, 2004) ............................................................. 6

*In re FirstMerit Bank, N.A.,*
   52 S.W.3d 749 (Tex. 2001) .................................................................................. 13, 14

*Hubbert v. Dell Corp.,*
   835 N.E.2d 113 (Ill. App. 2005) ............................................................................... 6

*Janda v. T-Mobile, USA, Inc.,*
   2006 WL 708936 (N.D. Cal. March 17, 2006) ................................................... 1, 4, 9

*Klussman v. Cross Country Bank,*
   134 Cal. App. 4th 1283 (2005) ..................................................................... 2, 11, 12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Konig v. U-Haul Co. of Cal.,*
52 Cal. Rptr. 3d 244 (2006) ........................................................ 7

*Laster v. T-Mobile USA, Inc.,*
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ................................... 4, 9

*Lindemann v. Eli Lilly and Co.,*
816 F.2d 199 (5th Cir 1987) ....................................................... 8

*Mount Diablo Medical Center v. Health Net of California, Inc.,*
101 Cal. App. 4th 711 (2002) ..................................................... 6

*Nedlloyd Lines B.V. v. Super. Ct.,*
3 Cal. 4th 459 (1992) .................................................................. 2

*Pennzoil Co. v. Arnold Oil Co.,*
30 S.W.3d 494 (Tex. App. 2000) .............................................. 14

*Porter & Clements, L.L.P. v. Stone,*
935 S.W.2d 217 (Tex. App. 1996) ............................................ 13

*Provencher v. Dell, Inc.,*
409 F. Supp. 2d 1196 (C.D. Cal. 2006) ............................. passim

*Prudential Sec. Inc. v. Marshall,*
909 S.W.2d 896 (1995) ............................................................. 13

*Ramirez v. Cintas Corp.*
2005 WL 2894628 (N.D. Cal. Nov. 2, 2005) ............................. 4

*Sherr v. Dell, Inc.,*
2006 WL 2109436 (S.D.N.Y. July 27, 2006) ............................. 6

*Simula, Inc. v. Autoliv, Inc.,*
175 F.3d 716 (9th Cir. 1999) .................................................... 15

*Skelton v. General Motors Corp.,*
660 F.2d 311 (7th Cir. 1981) .................................................... 14

*Spann v. Am. Express Travel Related Servs. Co.,*
2006 WL 2516431 (Tenn. App. August 30, 2006) ..................... 6

*Stenzel v. Dell, Inc.,*
870 A.2d 133 (Me. 2005) ............................................................ 6

*Ting v. AT&T,*
319 F. 3d 1126 (9th Cir. 2003) ................................................... 9

*United Steel Workers of America v. Warrior and Gulf Navigation Co.,*
363 U.S. 574 (1960).................................................................. 14

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Volt Info. Scis., Inc. v. Bd. of Trustees*,
    489 U.S. 468 (1989) .................................................................................. v, 14

4

*Washington Mut. Bank, FA v. Super. Ct.*,
    24 Cal. 4th 906 (2001) ......................................................................... 2, 4, 6, 7

5

6

*Winig v. Cingular Wireless LLC*,
    2006 WL 2766007 (N.D. Cal. Sept. 27, 2006) ......................................... 4, 9

7

*Wood Motor Co. v. Nebel*,
    238 S.W.2d 181 (Tex. 1951) ...................................................................... 4-5

8

9

**STATUTES**

10

9 U.S.C. § 1, *et seq.* (1947) ............................................................................. v

11

15 U.S.C. § 2301, *et seq.* (1975) .................................................................... 14

12

16 C.F.R. § 701.3 ............................................................................................ 14

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    SUMMARY OF ARGUMENT

Respondent bought a computer from Dell, a company based in Texas. She could have purchased from many manufacturers; she chose Dell. She chose Dell after visiting its web site, which referred many times to a dispute resolution clause, and after accepting Dell's Terms & Conditions, which require the parties to (among other things) resolve their differences according to Texas law. Her purchase contract referred her through the use of **BOLD FACED TEXT** to a standard binding arbitration agreement, which required Respondent to arbitrate breach of contract disputes. Respondent kept her Dell computer after receiving documentation that refers to Dell's "dispute resolution clause" on the cover page and after her thirty-day return period lapsed. Under these circumstances, should the Court allow Respondent to avoid her contract, sidestep a well-established and cost-effective arbitration mechanism that applies Texas law, and pick and chose which terms of her contract apply? The answer is no.

The Federal Arbitration Act ("FAA") (9 U.S.C. § 1, *et seq.* (1947)) controls here, and state laws or policies hostile to arbitration are preempted. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Under the FAA, arbitration agreements must be "enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989). Given these Supreme Court mandates, Texas law applies here. Texas law strongly favors arbitration, and its interests are superior to California's in the situation presented here. Thus, any doubt about the "existence or scope" of the subject arbitration agreement must be resolved in favor of arbitration. *Dell, Inc. v. Muniz*, 163 S.W.3d 177, 181 (Tex. App. 2005). Moreover, the California Supreme Court, the California Court of Appeal, and at least two United States District Courts have recognized that California does not have a fundamental policy against the type of class waivers contained in Dell's arbitration agreement. *See cases infra.* Respondent's remaining arguments do not overcome this authority and the FAA, nor do they trump the arbitration agreement. Put simply: Dell is not trying to dodge its responsibilities; it wants its contract with Respondent enforced according to its terms. Respondent agreed to arbitrate her claims against Dell, and the Court should grant Dell's Motion to Compel Arbitration.

## II.  ARGUMENT

### A.  Respondent and Dell Entered Into a Binding Arbitration Agreement

Respondent's Opposition ("Opp.") begins by arguing that an agreement does not exist between the parties because Dell can not specifically identify which arbitration provision accompanied Respondent's computer.  The argument fails for three reasons.  First, Respondent has already sued under the contract, thereby acknowledging its existence, and thus is estopped from taking a contrary position.  Second, Respondent's own authority disposes of her argument. For example, in *Janda v. T-Mobile, USA, Inc.*, 2006 WL 708936 (N.D. Cal. March 17, 2006) (05-03729 JSW), the signed service contract was not part of the record.  *Id.* at *1.  Nonetheless, *Janda* found that T-Mobile established the existence of an arbitration agreement because plaintiff activated his phone service with T-Mobile, thereby accepting T-Mobile's terms and conditions, including the arbitration clause.  *Id.* at *4.  Here, Respondent was presented with and agreed to Dell's Terms and Conditions by deciding to purchase and keep her Dell computer.  Those Terms and Conditions refer to the "dispute resolution clause" on the cover page.  Third, the Declaration of Mary Pape which attaches the parties' agreement and its arbitration clause is competent.[1]  The state court  overruled an identical objection: "Plaintiff's objections to the declaration of Mary Pape in support of petition to compel arbitration are overruled; Ms. Pape's personal knowledge has been adequately demonstrated."[2]  The foundation, which satisfied the state court and should satisfy this Court, is repeated verbatim in the Pape declaration filed here.  *See* Pape Decl., ¶¶ 1-2. The *Provencher* court was presented with similar challenges and likewise rejected them. *Provencher v. Dell,* 409 F. Supp. 2d 1196, 1198 (N.D. Cal. 2006).

---

[1] In *Heichmann v. Dell Computer Corporation,* Orange County Superior Court, Case No. 02CC00082, the court did not find Ms. Pape was incompetent to testify.  The Orange County Superior Court simply held that a declaration prepared in one case and cited in another did not lay a proper foundation to authenticate documents.  *See* Declaration of Mary Pape in Support of Dell's Motion to Stay Proceedings and Compel Arbitration, filed May 17, 2002, in *Heichmann;* Ex. 1 to Petitioners' Request for Judicial Notice in Support of Reply ("Reply RJN").

[2] *See Alvarez v. Dell* ("Minute Order Granting Motions of Defendants Dell, BancTec and QualxServ to Compel Arbitration and Stay Proceedings"); Ex. E to Petitioners' RJN.

1    **B.    The Court Must Enforce the Parties' Agreement and Compel Arbitration**

2    The arbitration language at issue is appropriately broad given that it covers the purchase

3    of consumer electronics.  Under these circumstances, only the most forceful and compelling

4    evidence of a purpose to exclude a claim from arbitration can prevail under the FAA.  *AT&T*

5    *Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).  Recognizing

6    that she has no evidence to satisfy this important requirement and that the presumption is

7    strongly in favor of arbitration (*see* Motion at pp. 5-6), Respondent argues instead that she can

8    side-step her arbitration agreement because (1) Texas law does not apply, (2) the class action ban

9    is unconscionable, and (3) arbitration is precluded by *Discover Bank v. Sup. Ct.* (36 Cal. 4th 148

10   (2005)) *and Klussman v. Cross Country Bank* (134 Cal. App. 4th 1283 (2005)).  These

11   arguments fail.

12   **C.    Texas Law Applies to Respondent's Agreement and Supports Arbitration**

13   California favors and respects parties' choice of law as long as that choice is reasonable.

14   *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 466 (1992); *Washington Mut. Bank, FA v.*

15   *Super. Ct.*, 24 Cal. 4th 906, 917-18 (2001) (applying "reasonable basis" test to consumer

16   adhesion contract).  Since the parties' agreement calls for the application of Texas law, and

17   Texas permits class action waivers,[3] there is a presumption that the waiver should be enforced

18   absent forceful evidence to the contrary.  *Id.* at 917.  Texas has a substantial relationship to the

19   transaction at issue.  Therefore, to overcome that presumption, Respondent must show that (1)

20   the selection of Texas law conflicts with a fundamental policy of California ***and*** (2) that

21   California has a materially greater interest in having its law applied.  *See Washington Mut. Bank,*

22   24 Cal. 4th at 917.  She can do neither under the circumstances of this case.

23   **1.    Texas Law Does Not Conflict With California Policy Because
         California Does Not Have an Overriding Prohibition Against Class
24        Action Waivers**

25   Respondent claims that Texas and California clash because *Discover Bank* held that class

26   waivers conflict with a profound fundamental California policy.  (Opp. at p. 9.)  Respondent

---

27   [3] *See* Opposition at p. 8, fn. 18 ("For purposes of this motion, Respondent assumes, for sake of
     argument, that Texas law would permit Petitioners to enforce their class action ban.").
28

1   stretches *Discover Bank* too far.  The California Supreme Court did not pronounce the blanket

2   rule Respondent urges this Court to adopt.  Instead, it remanded the case for further analysis of

3   the choice-of-law-issue to determine the reasonable scope of California's policy regarding class

4   action waivers.  Significantly, and contrary to Respondent's position here, *Discover Bank v. Sup.*

5   *Ct.,* 134 Cal. App. 4th 886 (2005) (*Discover Bank II*) on remand noted that "(1) the Supreme

6   Court did not hold in this case that all class action waivers are unconscionable under California

7   law, (2) neither the Supreme Court nor the California Legislature has announced a general policy

8   prohibiting the enforcement of class action waivers, (3) the case law positively indicates that

9   there is no fundamental policy to that effect."  *Id.* at 893.  Based on this reasoning, the court

10  adopted an approach consistent with the one Dell urges here and concluded that "[t]he parties'

11  choice of Delaware law [Texas, here] therefore governs enforceability of the class action waiver,

12  so the class action waiver will be enforced in this case."  *Id.* at 895.

13       Indeed, this Court has already rejected Respondent's overly-expansive reading of

14  *Discover Bank*:

15       [Plaintiff] relie[d] on *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30
         Cal.Rptr.3d 76, 113 P.3d 1100 (2005), to assert that California has a fundamental
16       policy against waiver of classwide arbitration. The Court cannot, however, read
         the *Discover Bank* case to hold California precludes all waivers of classwide
17       arbitration when the California Supreme Court explicitly stated that it did "not
         hold all class action waivers are necessarily unconscionable." *Id.* at 162, 30
18       Cal.Rptr.3d 76, 113 P.3d 1100; see also *Independent Ass'n of Mailbox Center
         Owners, Inc. v. Superior Court*, 34 Cal.Rptr.3d 659, 2005 WL 2249918 at *8
19       (Cal.App. Sept.16, 2005) ("classwide arbitration is well accepted under
         California law as workable and appropriate **in *some* cases**").
20

21  *Ramirez v. Cintas Corp.*, 2005 WL 2894628, at *5 (N.D. Cal. Nov. 2, 2005) (C 04-00281 JSW)

22  (emphasis in original).  This Court went on to state that since *Discover Bank* "provides that in

23  some instances waivers of class arbitration may be permitted, the Court cannot conclude that

24  application of Ohio law would necessarily violate a fundamental California policy on this basis."

25

26

27

28

1    *Id.*[4]  The same result should apply here.  California has many important policies, but the one

2    precluding class action waivers in certain circumstances is not "fundamental" under *Nedlloyd*

3    and does not trump the compelling need (discussed in more detail below) to apply Texas law in

4    this case, nor does it invalidate Dell's arbitration clause.

5            **2.    California Does Not Have a "Materially Greater Interest" Than Texas**
                     **in Resolving This Dispute**
6

7            Turning to the second factor, Respondent must establish that California has a materially

8    greater interest in having its law applied to this dispute than does Texas.  *Washington Mut.*, 24

9    Cal. 4th at 917.  However, instead of analyzing Texas's interest in the justifiable contractual

10   expectations of its citizens or in the consistent enforcement of contracts of its corporate citizens

11   engaged in interstate sales, Respondent summarily argues that "Petitioners have not even truly

12   attempted to evaluate the nature of the competing interests at stake.  Rather, they simply say that

13   Texas has an 'interest in the uniform enforcement of Dell's contracts with the residents of all

14   fifty states under Texas law.'"  (Opp. at 10:9-12.)  In addition to being factually incorrect –

15   Dell's Motion describes interests beyond the important goal of uniform enforcement –

16   Respondent's argument switches the burden of proof, ignoring the fact that ***the burden is on her,***

17   ***not on Dell,*** to analyze the respective interests.  *See Washington Mut.*, 24 Cal. 4th at 917.

18   Respondent cannot carry her burden by simply ignoring the significant interests of Texas,

19   particularly in light of the strongly-worded law and policy of Texas regarding the protection of

20   contracts.  As the Texas Supreme Court explained:

21           [I]f there is one thing which more than another public policy requires it is that
             [persons] of full age and competent understanding shall have the utmost liberty
22           of contracting, and that their contracts when entered into freely and voluntarily
             shall be held sacred and shall be enforced by Courts of justice.  Therefore, you
23
     _____

24   [4] *Provencher v. Dell, Inc.* is in accord based on its analysis of the same contract and arguments
     as those presented here:  "In *Discover Bank*, the California Supreme Court made it clear that
25   there is no blanket policy in California against class action waivers in the consumer context."
     409 F. Supp. 2d at 1201.  "[T]he parties' arbitration provision and class action waiver do not
26   violate a fundamental policy of California."  *Id.* at 1203.  It is also worth noting that none of the
     three principal cases relied on by Respondent (*Janda v. T-Mobile*, 2006 WL 708936; *Winig v.*
27   *Cingular Wireless LLC*, 2006 WL 2766007 (N.D. Cal. Sept. 27, 2006); *Laster v. T-Mobile USA,*
     *Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005)) involved a choice of law issue.
28

1    >   have *this paramount public policy to consider – that you are not lightly to
2    >   interfere with this freedom of contract.*

3    *Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 185 (Tex. 1951) (emphasis added).  Texas's

4    "paramount" interest cannot be abandoned absent a direct conflict with an overriding California

5    policy.[5]

6            Other courts agree.  Texas's fundamental public policy favoring enforcement of contracts

7    precludes the attempted invocation of another state's laws where the parties have contractually

8    agreed to settle their disputes under Texas law.  For example, in *Chesapeake Operating, Inc. v.*

9    *Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 176 (Tex. App. 2002), a dispute arose over whether

10   Louisiana or Texas law (the contractually designated law) should apply to certain indemnity

11   disputes.  The Texas court applied the contractually selected law, reasoning in part:

12   >   Neither party expected Louisiana's indemnity statute to apply, unless they had
13   >   their fingers crossed when they signed.  In such circumstances, it would be
     >   "unfair and improper" to allow Chesapeake to appeal to Louisiana law to undo
14   >   the parties' bargain. *Id.*

15   Here, Texas's fundamental policy in favor of freedom of contract and upholding contractual

16   expectations should control.  Respondent was under no obligation to buy from Dell and was told

17   numerous times through Dell's website and documentation that Texas law would apply.  She

18   could have purchased from another computer manufacturer, but she did not.  She could have

19   returned her computer within thirty days, but she did not.  Texas-based Dell has, and had, every

20   reason and right to select its own state's law in the contract it drafted long before entering into its

21   specific contract with Respondent.  Texas law provides Dell with an important level of certainty

22   regarding its rights and obligations.  Respondent bought subject to that law, and there is no

23

24   _____

25   [5] After spending four pages analyzing and balancing these interests, the *Provencher* court ruled
     that "[t]he record is clear that California does not have a materially greater interest than Texas."
26   *Provencher*, 409 F. Supp. 2d at 1204, fn. 10.  Respondent argues that the *Provencher* court
     "ignored . . . *Discover Bank* in enforcing Dell's Texas choice of law provision."  (Opp. at 11:15-
27   16.)  The *Provencher* court, however, cited *Discover Bank* thirteen times, eleven in its choice-of-
     law analysis. *Provencher*, 409 F. Supp. 2d at 1201-04.
28

1    reason to depart from the mutually agreed upon arbitration provision.[6]

2          Moreover, Respondent will lose nothing by having Texas law applied because she can be

3    made whole through the arbitration process.  Indeed, her complaint is not that she will lose her

4    own rights, but that she will lose the right to assert claims for others.  Comparing Texas's

5    "paramount" policy to protect the freedom of contract and its citizens' contractual expectations

6    with California's interest in allowing Respondent to avoid contractual terms to which she agreed

7    so that she can serve as the anchor for a purported class action against Dell, favors the

8    application of Texas law.[7]

9          Finally, the interest Texas has in enforcing the choice of its law is reflected in the

10   numerous courts which have applied Texas law and enforced the class action waiver.  *See*

11   *Provencher v. Dell* (409 F. Supp. 2d at 1204-05); *Stenzel v. Dell, Inc.*, 870 A.2d 133, 144 (Me.

12   2005); *Hubbert v. Dell Corp.*, 835 N.E.2d 113 (Ill. App. 2005); *Falbe v. Dell Inc.*, 2004 WL

13   1588243, at *2-3 (N.D. Ill. July 14, 2004); *Dell, Inc. v. Muniz*, 163 S.W.3d 177, 181 (Tex. App.

14   2005); *Sherr v. Dell, Inc.*, 2006 WL 2109436, at *7 (S.D.N.Y. July 27, 2006); and *Adams v. Dell*

15   *Computer Corp.*, 2006 WL 2670969, at *3 (S.D. Tex. Sept. 18, 2006).  Finding in Dell's favor

16   here would be consistent with California's policy of producing certainty and predictability "in

17   determining the meaning of contracts."  *Mount Diablo Medical Center v. Health Net of*

18   *California, Inc.*, 101 Cal. App. 4th 711, 721, fn. 8 (2002).  Finding for Dell would also be

19   consistent with the "overwhelming majority" of courts holding that class action waivers do not

20   render an arbitration agreement unconscionable.  *See Spann v. Am. Express Travel Related Servs.*

21   *Co.*, 2006 WL 2516431, at *12 (Tenn. App. August 30, 2006) (discussing case law).

22

23

24   [6] When she first filed suit, Respondent based all of her claims solely on Texas law.  Respondent also conceded that Texas law applied in briefing the Motion to Compel Arbitration in state court.

25   *See* Opposition to Defendants' Motions to Compel Arbitration, repeatedly arguing Texas law and even arguing (at 3:5-7) that non-Texas "approve or return" cases cited by Dell are "irrelevant:

26   these cases do not interpret Texas law."  *Id.* at 9:16-25; Ex. 2 to Reply RJN.

27   [7] *See Washington Mut.*, 24 Cal. 4th at 925-26 (describing a class action involving the laws and residents of other states as a "massive burden" that California courts should not undertake absent

28   a "special obligation").

**D.    Dell's Arbitration Agreement is Fair and Enforceable – It is Not Unconscionable**

Respondent also claims that Dell's arbitration agreement is unconscionable, which requires her to prove that the class action waiver is both substantively and procedurally flawed. *Konig v. U-Haul Co. of Cal.*, 52 Cal. Rptr. 3d 244, 250 (2006).  Respondent has failed to prove these requirements as well.

**1.    Dell's Arbitration Agreement is Not Exculpatory**

Respondent's main argument is that Dell's arbitration agreement is substantively unconscionable because the "small amounts" at issue make the clause exculpatory.  (Opp. at 6:1-7:18.)  In support, Respondent relies entirely on a single unsubstantiated sentence: "very few customers will pursue claims against Petitioners if they can do so only on an individual basis."  (Opp. at 7:8-9.)  This sentence lacks supporting evidence and falls markedly short of what is required to prove that a contract is exculpatory. *Washington Mut.*, 24 Cal. 4th at 917 (noting burden).  Here, Respondent at a minimum seeks approximately $360 per plaintiff (*i.e.*, $300 for the two-year service contract extension and $60 for the first year alone).  Moreover, she purchased her computer for $2,387.  The question is *not* – as Respondent suggests – whether a clause is exculpatory using hindsight applied to the amount pled in a complaint.  Rather, the question is whether *de minimus* claims for damages are "predictable" from the contract itself containing the arbitration waiver. *Konig*, 52 Cal. Rptr. 3d at 252.[8]  $360 is far from *de minimus* compared to the $25 NAF expense (which Dell has agreed to pay here), and a *de minimus* amount of damages was far from "predictable" based on the contract alone and the nature of Dell's business.  As noted, Dell's arbitration agreement is extremely broad; its computers can cost thousands of dollars, and customers are free to buy as many as they like.  Businesses often do.  Thus, the damages were potentially significant at the time the class action waiver was

---

[8] Put another way, the test is not whether Respondent's counsel can, on their seventh try (three Complaints in *Smulders*, two in *Provencher* and two here) devise language which will help her circumvent the terms of her written contract.  If this were the test, the incentives and opportunities for result-oriented pleading would be profound.

1   incorporated into the purchase contract, thus defeating Respondent's claim of substantive

2   unconscionability.  Moreover, the NAF is designed to resolve expeditiously and inexpensively

3   the very dispute before the Court, and Dell's arbitration provision should not be gutted,

4   especially when it adopts a consumer-friendly arbitration mechanism that is "without question an

5   inexpensive, efficient, and convenient forum for resolving commercial disputes." *Provencher,*

6   409 F. Supp. 2d at 1198.  Respondent has not established that Dell's arbitration agreement is

7   substantively unconscionable.

8              Nor is it procedurally unconscionable.  Although Respondent might claim an

9   inability to bargain, she had the ultimate bargaining power – she could have decided not to buy a

10  Dell computer, and she could have returned it thirty days after receipt.  *See, Lindemann v. Eli*

11  *Lilly and Co.,* 816 F.2d 199, 203 (5th Cir 1987) (purchasing "alternatives" militate against

12  procedural unconscionability).  Given this dispositive fact, the *Provencher* court agreed that the

13  clause is not procedurally unconscionable: "In contrast to the arbitration provision and class

14  action waiver involved in *Discover Bank*, the parties' arbitration provision and class action

15  waiver here do not exempt Dell from the consequences of its alleged wrongdoing. [citation]."

16  *Provencher,* 409 F. Supp. 2d at 1203.  The same result should apply here.

17       **2.    Respondent's Case Law and Additional Arguments Do Not Support a**
18              **Finding of Unconscionability**

19             Respondent also supports her claim of unconscionability by relying heavily on

20  *Discover Bank.*  The facts of the present case, however, are much different.  There, the court

21  found that the plaintiff's claim of an improper $29 credit card charge did not justify his taking

22  the action to small claims court and paying a $22 filing fee along with the cost of mail service by

23  the court clerk.  *Discover Bank*, 36 Cal. 4th at 162-63.  At best, the plaintiff could have recovered

24  a few dollars.  Here, if Respondent successfully arbitrates against Dell, her $25 filing fee

25  (assuming she paid it) would allegedly gain her a functional computer system, for which she paid

26  $2,387, and she would receive the benefit of her bargain on an approximately $300 service

27

28

CASE NO. C-06-5928 JSW                    -8-                    DELL'S REPLY ISO MOTION
                                                                TO COMPEL ARBITRATION

1    contract, a result sufficient to justify individual arbitration against Dell.[9]  Respondent's other

2    cases do not apply because the factual circumstances are markedly different.[10]

3          **E.**        **The Arbitration Agreement is Also Enforceable Under California Law and**

4                  ***Discover Bank***

5          If this Court accepts Respondent's arguments, the parties' choice of the cheapest

6    and fastest arbitration forum would be invalidated, and future plaintiffs would argue there is no

7    arbitration agreement between Dell and its California consumers who buy sophisticated

8    electronic equipment.  Assuming they trump controlling authority under the FAA,[11] *Discover*

9    *Bank* and *Klussman* did not intend such a sweeping result – as Respondent claims – by

10    invalidating wholesale a select group of class action waivers inserted into contracts that are

11    markedly different than the one at issue here.

12          **1.**      ***Discover Bank* and *Klussman* Do Not Announce a Blanket Rule Against**

13                 **Class Action Waivers.  They Require a Case-by-Case Analysis**

14          As noted above, *Discover Bank* did "not hold that all class action waivers are

15    necessarily unconscionable" because its holding only applies "to the extent the obligation at issue

---

16

17    [9] The *Provencher* court found that smaller damages (a $1,600 computer and a $250 service contract) left an amount in controversy which was anything but small.  *Provencher*, 409 F. Supp. 2d at 1202.

18

19    [10] *Janda v. T-Mobile*, 2006 WL 708936; *Winig v. Cingular Wireless LLC*, 2006 WL 2766007; and *Laster v. T-Mobile*, 407 F. Supp. 2d 1181 all involve cellular telephone service providers and single-digit or low double-digit potential damages.  *Winig* involved the use of airtime minutes

20    (presumably costing a few cents apiece) spent checking voicemail.  In *Janda*, the potential

21    damages at issue were a "regulatory cost recovery fee" added to customers' cell phone bills and the defendant explicitly conceded that the damages were small (*Janda*, 2006 WL 708936, at *6).

22    *Laster* involved sales tax on cell phones, $10.31 to one plaintiff (*Laster*, 407 F. Supp. 2d at 1184) and $28.22 to another (*id.* at 1185).  Of note, Laster would have had to pay a $25 filing fee to

23    pursue her $28.22 claim.  These are precisely the types of cases envisioned by *Discover Bank,* but they differ in a dispositive way from the facts presented here.

24    [11] Respondent misunderstands Dell's preemption argument.  *See* Opposition at 12:17-13:3.  Dell

25    agrees that FAA preemption does not invalidate California unconscionability law as long as it is general and applied to every contract entered into in the state.  FAA preemption is nonetheless

26    important to the choice-of-law analysis because it precludes Respondent's reliance on her CLRA and Song-Beverly claims to invalidate the choice-of-law provision.  Under *Ting v. AT&T*, 319 F.

27    3d 1126, 1148 (9th Cir. 2003), such reliance on the CLRA – even in the choice-of-law analysis – is preempted by the FAA.  *See* Motion at pp. 8-10.

28

1    *is governed by* California law." *Discover Bank*, 36 Cal. 4th at 162-163 (emphasis added).

2    Several Court of Appeal opinions have recognized the inference from this holding – not all class-

3    action waivers are unconscionable and not all are governed by California law.[12]

4               2.    **Dell's Position Does Not Conflict With *Discover Bank* Because the**
                      **Factual Setting Is Different**
5

6               Two key facts distinguish *Discover Bank* from the situation here.  First, as noted,

7    plaintiff claimed that Discover Bank imposed "a late fee of approximately $29" when it received

8    a payment on the due date, but after the 1 p.m. deadline.  36 Cal. 4th at 154.  This amount

9    (described by the Supreme Court as "paltry" (*id.* at 157)) is markedly less than the amount at

10   issue here.  Second, the Supreme Court emphasized that plaintiff's cardholder agreement did not

11   contain the arbitration agreement *at the time it was drafted*. *Id.* at 160.  It was only several years

12   after plaintiff became a cardholder that Discover Bank added an arbitration clause by including

13   the document as a "bill stuffer" inside routine correspondence to the customer.  *Id.*  Thus, the

14   degree of unconscionability was high.  *Id.*  That situation is the exact opposite of the situation

15   here.  Dell's agreement already contained the arbitration agreement and class action waiver at the

16   time Respondent bought her computer.  Respondent could have rejected it by returning her

17   computer.  Moreover, Respondent (like many consumers) purchased a high-end personal

18   computer worth thousands of dollars and an extended service contract worth in excess of $300.

19   This is not a case about a "paltry" $29 charge covered by an arbitration agreement placed in a

20   "mail stuffer."  These distinctions highlight the very different practical realities surrounding the

21   dispute at issue here and in *Discover Bank*.  Indeed, mindful of the potential of FAA preemption

22   posed by ruling too broadly, the Supreme Court directed lower courts to engage in a case-by-case

23   analysis and carefully weigh the unique circumstances.  *Id.* at 162-163.  As discussed above, the

24   circumstances here weigh against a finding of unconscionability, and Respondent's position

25   writes out of California law this important distinction based on *Discover Bank's* holding.

26

27   [12] *See, e.g., Discover Bank II*, 134 Cal. App. 4th at 894 (applying Delaware law and upholding
     class-action waiver).
28

3.   ***Klussman* Does Not Apply Because it Involved a "Bill Stuffer" and a "Hidden Waiver"**

Perhaps recognizing that *Discover Bank* does not support her broad-sweeping arguments, Respondent also relies heavily on the Court of Appeal decision in *Klussman*. *Klussman*, however, is distinguishable for many of the same reasons which make *Discover Bank* distinguishable. The *Klussman* plaintiff applied for and received her credit card in 1997. Defendant inserted an arbitration clause in a "bill stuffer" in 1999, which prohibited pursuing claims in court or in arbitration on a classwide basis. *Klussman*, 134 Cal. App. 4th at 1288, fn. 3. Again, the opposite occurred here. Dell's arbitration agreement existed at the time the contract with Respondent was formed, and even Respondent does not claim it is a "stuffer." *See also Cohen v. DirecTV*, 142 Cal. App. 4th 1442, 1450 (2006) (finding unconscionability because a "bill stuffer" was used by defendants).[13]

Here, the arbitration clause and class waiver were available to Respondent before, during and after the time she ordered her computer. They were also available during her thirty-day-return period. The *Provencher* court found these facts important and dispositive:

> Notably, the arbitration provision here was part of the Agreement from the beginning. In *Discover Bank*, in contrast, the parties' agreement did not contain an arbitration clause when plaintiff's credit card was issued in 1986. 36 Cal.4th at 153, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Rather, *Discover Bank* did not add the arbitration clause until thirteen years later, in 1999. *Id., see also, Mantor*, 335 F.3d 1101 (holding Circuit City's employee arbitration agreement unconscionable where employee who had been working there for six years was forced to accept the agreement or "have no future with Circuit City."

*Provencher*, 409 F. Supp. 2d at 1206, fn. 12. Finally, courts hesitate to enforce "hidden waivers," another concern not applicable here. This was a significant factor in the *Klussman* court's refusal to enforce the arbitration agreement and class waiver. *Klussman*, 134 Cal. App.

---

[13] The *Cohen* court expressly distinguished the facts of *Provencher* (and by inference the facts at issue here) by noting that the *Provencher* "case has numerous significant differences from the class action waiver in this case, not the least of which is that Provencher entered into his transaction with full knowledge of its terms, and indeed with a 30-day rescission option, rather than having the class action waiver presented by means of amendment as a 'take it or leave it' bill stuffer." 142 Cal. App. 4th at 1455, fn. 13.

1   4th at 1298 ("We find the reasoning of *Discover Bank* even more compelling in this case because

2   the waiver in this case was not expressed in the agreement.").[14]

3
                    **4.      *Klussman* is Inconsistent With *Discover Bank***
4

5          Finally, *Klussman* does not apply for an additional reason:  it is inconsistent with

6   *Discover Bank* itself.  *Discover Bank* instructed courts to assess the value of claims which would

7   "predictably" arise from an agreement at the time the contract was formed.  As the language

8   reflects, the Supreme Court sensibly announced a test that is *independent* of what a plaintiff

9   asserts in a pleading.  The dispositive question is what *might* plaintiff seek as opposed to what

10  plaintiff does seek.  *Discover Bank,* 36 Cal. 4th at 162 (couching analysis in terms of whether

11  disputes "predictably involve small amounts of damages").  *Klussman,* however, assessed the

12  arbitration provision by examining the damage claims alleged by the plaintiff, essentially turning

13  the intention of the parties on its ear and creating a "free for all" where crafty pleading aided by

14  hindsight trumped drafting that occurred before the parties finalized their agreement.  Such a

15  result is not warranted here.

16          **F.      Respondent's Remaining Argument Does Not Support Her Requested Relief –
                      the "Warranty Carve-out" Does Not Apply**
17

18         Respondent argues her claims fit an exception to the arbitration clause that she

19  misconstrues as applying to *all* warranty claims.  (Opp. at 14:15-16.)  This exact argument

20  regarding the "warranty carve-out" was explicitly rejected by the state court ("Minute Order

21  Granting Motions of Defendants Dell, BancTec and QualxServ to Compel Arbitration and Stay

22  [14] Respondent has repeatedly argued that the class action bar is a so-called "hidden waiver of
    class actions," even though that argument has been repeatedly and correctly rejected, in
23  particular by *Provencher*: "Mr. Provencher argues . . . that the class action ban here is a 'hidden
    waiver.' . . . his argument is clearly wrong.  The class action waiver was explicitly and
24  conspicuously set forth in the agreement that Mr. Provencher was able to review before, while,
    and after he ordered the computer. [Citation.]  The agreement explicitly states:  'The arbitration
25  will be limited **solely** to the dispute or controversy between Customer and Dell.' [Citation.]  The
    class action waiver was not hidden in the rules of the National Arbitration Forum; rather, it was
26  explicitly set forth in the parties' agreement." (February 13, 2006 "Order Denying Plaintiff's
27  Motion for Certification of the Court's January 3, 2006 Order," at p. 4.  Ex. I to Petitioners'
    RJN.)  (Emphasis in original.)
28

CASE NO. C-06-5928 JSW                        -12-                        DELL'S REPLY ISO MOTION
                                                                         TO COMPEL ARBITRATION

1   Proceedings." Ex. E to Petitioners' RJN)[15] in this case and in *Provencher*, 409 F. Supp. 2d at

2   1206, fn. 13. It also fails because Respondent's reading of the exception contradicts the plain

3   language of the warranty exception applying it only to claims "arising under the *applicable*

4   written warranty" (emphasis added). Pape Decl., Ex. A, § 12.

### 1.   **Respondent's Claims Are Not Based on the Applicable Written Warranty.**

7   The arbitration agreement requires arbitration of all claims except those "arising under the

8   applicable written warranty." *Id.* The Agreement itself shows this language means "Dell's

9   Applicable Warranty Statement" that accompanied the computer sent to Respondent. *Id.*, Ex. A,

10  § 6. The warranty statement that Dell delivers to its customers is attached to the Pape

11  Declaration at Ex. F. The Agreement disclaims all other warranties except for the Dell written

12  warranty statement. *Id.* Dell's written warranty promises that Dell products "will be free from

13  defects in materials and workmanship" and explains a purchaser's rights should a part break. *Id.*,

14  Ex. F, pp. 2-3. Respondent's claims are based on representations found on Dell's website,

15  catalogs, and her BancTec service contract, not in her warranty. Motion at pp. 7-8. However, it

16  is the parties' intent *as manifested in the contract language* that controls. *Porter & Clements,*

17  *L.L.P. v. Stone*, 935 S.W.2d 217, 220 (Tex. App. 1996). Respondent's warranty claims based on

18  statements found online and in catalogs and third party service contracts do not fit this exception.

### 2.   **Even if Some Ambiguity Exists, the Claims Still Must Be Arbitrated**

20  Once Dell proves an arbitration agreement exists, it is Respondent's burden to show that

21  the agreement does not apply to her claims. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896,

22  900 (1995). Because the FAA and Texas's state policies favor arbitration, "a presumption exists

23  favoring agreements to arbitrate under the FAA, and courts must resolve any doubts about an

24  arbitration agreement's scope in favor of arbitration." *In re FirstMerit Bank, N.A.*, 52 S.W.3d

---

[15] "The claims asserted in Plaintiff's unverified complaint do not fall within the 'applicable written warranty,' but instead, are based on breach of the 'Next-Business-Day At-Home' extended warranty service contract. Accordingly, Plaintiff's claims against Dell, BancTec, Inc., and Qualxserv do not come within the exception articulated in the agreement. Plaintiff's claims are subject to binding arbitration"

749, 753 (Tex. 2001); *see AT&T Tech., Inc.*, 475 U.S. at 650.[16]  Respondent cannot show

conclusively her claims are not subject to arbitration.  Thus, she must arbitrate.[17]

### 3.   A Single Sentence From Dell's Brief in *Heichmann* Does Not Change the Result

Ignoring the plain language of the arbitration clause, Respondent also claims that "the

warranty carve out was intended to cover <u>all</u> written warranties." (Opp. at 14:15-16.)  For

support, Respondent misstates the meaning of one sentence from Dell's appellate brief in

*Heichmann*.  While it is true Dell intended for the warranty exception to accommodate the FTC's

view on arbitration of Magnuson Moss Warranty Act ("MMA") (15 U.S.C. § 2301, *et seq.*

(1975)) warranty claims, it is also true that Dell excluded only claims alleging violation of its

MMA-compliant warranty.  Under the MMA, a warranty must be a single document (*see Skelton

v. General Motors Corp.*, 660 F.2d 311, 322 (7th Cir. 1981)), and it must provide detailed

information.  *See* 16 C.F.R. § 701.3.  The only document meeting that criteria is the "applicable

written warranty" Dell sent with the computer.  Dell did not intend to exclude all conceivable

warranty claims.  If all warranty claims were excluded, the arbitration clause would cover

nothing.  As Respondent has shown, any claim, contract or tort, can be renamed a warranty

claim.  Dell did not intend such a result, and did not use language to that effect.  Since

---

[16] *See also City of Galveston v. Galveston Mun. Police Ass'n.*, 57 S.W.3d 532, 536 (Tex. App. 2001) ("[A] court should not deny [a motion to compel] arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible to an interpretation that would cover the dispute at issue."); *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App. 2000); and *United Steel Workers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 585 (1960) ("only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.").

[17] Respondent's argument that ambiguities in the arbitration agreement should be construed against Dell is wrong.  "[A]ny doubts" about an arbitration agreement's scope *must* be resolved in favor of arbitration.  *FirstMerit*, 52 S.W.3d at 753-54; *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 476 (1989).  Similarly, Respondent's argument that under the UCC, what constitutes a warranty is a fact question is irrelevant when an arbitration clause is at issue.  The question is the scope of the arbitration clause, and the meaning of the "applicable written warranty."  The UCC does not address the language of the Agreement, which dictates the scope of arbitration or the requirement that any doubts about an arbitration agreement's scope must be resolved in favor of arbitration.  *AT&T Tech., Inc.*, 475 U.S. at 690.

1  Respondent does not sue under the "applicable written warranty," her claims must be

2  arbitrated.[18]

3  **III.    CONCLUSION**

4        Under the FAA, "the district court can determine only whether a written arbitration

5  agreement exists, and if it does, enforce it in accordance with its terms." *Simula, Inc. v. Autoliv,*

6  *Inc.,* 175 F.3d 716, 719-20 (9th Cir. 1999).  State laws or policies that are hostile to arbitration

7  are preempted by the FAA.  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (states

8  may not single out arbitration provisions for suspect status.  Such provisions must be placed on

9  the same footings as other contracts.)  Dell's arbitration agreement with Respondent is

10  reasonable and fair.  Respondent had numerous chances to buy a high-end piece of consumer

11  electronics from another manufacturer if she did not want to arbitrate her claims.  The Court

12  should grant Dell's Motion to Compel Arbitration.

13  DATED:  January 16, 2006              PAUL, HASTINGS, JANOFSKY & WALKER LLP

14                                          By:  _____/s/ Richard E. Elder_____

15                                                        Richard E. Elder

16                                          Attorneys for Petitioners
                                           DELL INC., DELL CATALOG SALES, L.P.,
17                                          DELL PRODUCTS, L.P.

18  # 55446695.5

19

20

21

22

23

---

24  [18] Respondent's reliance on the *Heichmann* Court's Minute Order is of no moment either.
25  Without analysis, that court said that "claims arising from the warranties" were inabitrable.
   (Respondent's Request for Judicial Notice, Ex. F.)  There is no way to know if the *Heichmann*
26  Court was referring to Dell's "applicable written warranty" or something more.  Respondent
   likely quotes the state court's Minute Order to convince this Court that the MMA prevents
27  arbitration of warranty claims.  That assertion has been rejected by the Texas Supreme Court. *In*
   *re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 492 (Tex. 2001).
28